No. 02-713

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 131

NED ELE,

        Plaintiff and Appellant,

    v.

JOEY EHNES,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDV-01-339
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Charla K. Tadlock; Murphy Law Firm, Great Falls, Montana

        For Respondent:

            Paul R. Haffeman; Davis, Hatley, Haffeman & Tighe, Great
Falls, Montana

Submitted on Briefs:  February 6, 2003

Decided:  April 29, 2003

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Ned Ele brought this action to recover damages for injuries from an automobile accident.  A jury in the Eighth Judicial District Court, Cascade County, found Ele was not injured as a result of the accident and, accordingly, the District Court entered judgment for Joey Ehnes.  Ele appeals.  We affirm.

¶2     The issues are:

¶3     1.  Did the District Court abuse its discretion via the special verdict form it gave the jury?

¶4     2.  Does substantial credible evidence support the jury's verdict?

Background

¶5     On August 8, 2000, Ele's wife was driving their Geo Metro car, which was stopped in traffic in Great Falls, Montana.  Ele was seated in the front passenger seat and two passengers occupied the back seat.  Ehnes rear-ended the Metro with her Toyota Tercel.  The low-speed accident did no structural damage to Ele's Metro and no damage at all to Ehnes' Tercel.  Ehnes estimated the speed of impact as five miles per hour or less.

¶6     When Ehnes asked if they were okay, Ele's wife responded "We're fine."  Before police arrived at the accident scene, Ele walked around directing traffic, seemingly uninjured.  When a police officer arrived, Ehnes noticed that Ele "grab[bed] his neck like he might have had whiplash."

¶7     Eight months later, Ele and the other passengers in the Ele vehicle filed suit against Ehnes, seeking damages for injuries resulting from the accident.  Ehnes admitted that her

2

negligence caused the accident, but contested the plaintiffs' claims of injury and damages. Ehnes settled with the other plaintiffs prior to trial.

¶8    Ele testified at trial that he realized he was injured within 10 minutes after the accident and sought medical treatment for a low back injury at a hospital emergency room approximately 45 minutes later. From then until the trial two years later, Ele sought treatment from several health care providers for low back pain.

¶9    Ele testified that, as a result of the accident, medical limitations were placed on his activities such as lifting, stooping, bending and twisting. He testified he had a lot of stiffness, loss of flexibility and pain in his back and that he reluctantly took medication to control his pain. He could no longer "roughhouse" with his children as he had before, or bowl, jet ski, dance, roller skate or sleep on the ground while camping. He testified it was particularly difficult for him to carry heavy bags of garbage and lift them into the garbage can.

¶10    On cross-examination, Ele admitted to having denied prior back injury in a medical history form he completed a month after the accident, and having advised his treating physicians he had no prior back injury or emotional illnesses. In fact, he did have prior back problems and had been hospitalized for depression. He testified that he did not tell his physicians about those matters due to a memory lapse.

¶11    On further cross-examination, Ele was questioned about one of his physician's notes stating that he reported having been in a vehicle rear-ended by a car traveling at 45 miles per

hour.  Ele's explanation was that he had told the physician the speed limit in the accident area was 35 or 45 miles per hour, and that the physician misquoted him in the notes.

¶12    Ele's treating physician, Dr. Ronald Peterson, testified that he initially diagnosed Ele as suffering from low back pain and sleep disturbance.  Peterson later diagnosed myofascial back pain--which he defined as back pain which is primarily muscular in origin--and pain from irritation or inflamation of a disc.  Peterson testified Ele had a preexisting condition but that he believed the accident "had the potential" of making Ele's condition symptomatic.  Peterson testified that the trauma of the car accident was the probable cause of Ele's injuries and that Ele's injuries are consistent with a rear-end motor vehicle collision.  He further testified he had no reason to question the cause of Ele's injuries.

¶13    Peterson agreed on cross-examination that, after an accident, it is very difficult to separate injury caused by the accident from injury which may have predated the accident.  Because Ele had denied any prior history of back pain when giving Peterson his medical history, Peterson was unaware that Ele had a pre-accident history of chronic back pain until a few days before trial.  Peterson admitted that x-rays and MRI films show that Ele had preexisting disc space narrowing, significant bone spur development, sclerosis of the sacroiliac joint, congenital spinal stenosis, protruding discs and advanced degenerative joint disease.  According to Peterson, a diagnosis of myofascial back pain is based on a patient's reports of pain, not on objective test results.  Although Peterson believed Ele was not a malingerer, he admitted that his records included the notes of a physical therapist indicating

4

that Ele's movement patterns when he was distracted showed he was capable of more movement than he claimed.

¶14 A co-worker of Ele's testified that, in the months following the accident, he observed Ele moving heavy objects at work without apparent difficulty. Another of Ele's co-workers testified he had seen Ele jet-skiing on choppy water at Holter Lake, carrying an apparently heavy cooler, and bending and twisting while setting up a tent. A third co-worker testified he observed Ele bowling. A fourth co-worker testified that he had observed Ele carrying a heavy garbage bag slung over his shoulder while talking on a cell phone and then lifting the lid of a garbage can in the alley behind his house with his elbow and throwing the bag into the garbage can.

¶15 In response to his co-workers' observations, Ele testified he had tried jet skiing and bowling once, to see if he could, and had suffered tremendous pain for several days after trying each of them. He described trash-hauling as an everyday activity which he split with his wife and on which he "work[ed] through the pain."

¶16 At the close of the evidence, the District Court gave the jury a verdict form presenting the following two questions:

> QUESTION NO. 1: Defendant Joey Ehnes has admitted responsibility for the motor vehicle accident at issue in this lawsuit. Was Plaintiff Ned Ele injured as a result of that accident?
>
> ANSWER: YES _____ NO _____
>
> If your answer to Question No. 1 is "yes," proceed to Question No. 2. If your answer to Question No. 1 is "no," please sign, date and return your verdict.

5

QUESTION NO. 2: What is the total amount of damages, if any, which will compensate Plaintiff Ned Ele for the injuries he sustained in the accident?

ANSWER: $_____

The jury answered "no" to the first question and, as directed, signed, dated and returned the verdict form. Ele appeals.

Issue 1

¶17 Did the District Court abuse its discretion via the special verdict form it gave the jury?

¶18 Ele contends that the verdict form contained errors of law. However, our ordinary standard of review of a discretionary trial court ruling, including the use of a special verdict form, is whether the court abused its discretion. *Barthule v. Karman* (1994), 268 Mont. 477, 488, 886 P.2d 971, 978.

¶19 Ele contends the District Court should have used the following verdict form, which he offered:

> The defendant, Joey Ehnes, admitted that she was responsible for the accident. Therefore, there is only one question for the jury to consider: What is the total amount of damages, if any, which would compensate Ned Ele for the damages caused by the accident?
> $ _____

He argues that the verdict form the District Court provided was inconsistent with the instructions on negligence in that it did not ask if Ehnes' conduct was the cause of his damages. He contends the first question asked of the jury does not really relate to either causation or damages. He also argues that the special verdict form should not have included the question of whether he was injured, because the amount of his injury was the only

6

question for trial. In this regard, Ele points out that, in the Pretrial Order, Ehnes agreed to describe the sole issue of fact at trial as "[t]he amount of the Plaintiffs' accident-related injury and damage claims."

¶20 Taking Ele's contentions in the order presented, we note that Ele's verdict form did not ask if Ehnes' conduct was the cause of Ele's damages. Therefore, Ele cannot be heard to claim error if the jury instruction propounded by the District Court omitted such a question. We will not hold a district court in error for an action to which the appellant acquiesced or in which he actively participated. *State v. LaDue,* 2001 MT 47, ¶ 23, 304 Mont. 288, ¶ 23, 20 P.3d 775, ¶ 23 (citation omitted).

¶21 In fact, however, causation is the issue posed in the first question which the District Court's verdict form propounded to the jury. Ele has cited to no requirement that the language used in a verdict form must precisely mirror the terminology used in jury instructions. Here, the first question, asking the jury to find whether Ele was injured "as a result" of the accident for which Ehnes had taken responsibility, effectively asked whether Ehnes' admitted negligence "was the cause of" injury to Ele, in the words of the negligence instruction given to the jury.

¶22 Furthermore, the inclusion of that issue does not conflict with the pretrial order, as Ele claims. The pretrial order describes the issues remaining for trial as the amount of Ele's "accident-related" injury. The use of the term "accident-related" confirms that the issue remaining for trial was not merely the amount of Ele's damages, but the amount of damages caused by and related to the accident.

7

¶23    We hold Ele has failed to establish that the District Court's special verdict form constitutes an abuse of discretion.

Issue 2

¶24    Does substantial credible evidence support the jury's verdict?

¶25    We review a jury's verdict in a civil case to determine whether substantial credible evidence in the record supports the verdict.

> It is not our function to agree or disagree with the jury's verdict and, consequently, if conflicting evidence exists, we do not retry the case because the jury chose to believe one party over the other. . . . [I]n reviewing the sufficiency of the evidence to support a jury verdict, we review the evidence in a light most favorable to the prevailing party.

*Magart v. Schank*, 2000 MT 279, ¶ 4, 302 Mont. 151, ¶ 4, 13 P.3d 390, ¶ 4 (citations omitted).

¶26    Ele states that "[t]his Court has set aside other jury verdicts with zero damage awards in cases identical to the one at bar." Ele is incorrect and *Thompson v. City of Bozeman* (1997), 284 Mont. 440, 945 P.2d 48, and *Renville v. Taylor*, 2000 MT 217, 301 Mont. 99, 7 P.3d 400, on which he relies to support his position, are readily distinguishable from the present case.

¶27    In *Thompson*, the plaintiff's vehicle was rear-ended by a vehicle driven by a Bozeman police officer. In that case, like this one, the defendant admitted negligence and that the negligence caused the auto accident at issue. There, we affirmed the district court's order for a new trial after the jury found some injury had been caused by the accident but refused to

8

award damages for pain and suffering, even though the plaintiff presented evidence that pain and suffering occurred. *Thompson*, 284 Mont. at 446-47, 945 P.2d at 52.

¶28 In *Renville*, the plaintiff sought damages after being in a vehicular rear-end collision for which the defendant admitted fault. The issues for trial were whether the defendant caused injury to the plaintiff and, if so, the amount of the plaintiff's damages. The jury found that the accident caused injury to the plaintiff and awarded damages, but limited those damages to past medical expenses. The plaintiff had presented evidence of other damages including future medical expenses, loss of earning and earning capacity, pain and suffering, and loss of ability to pursue her occupation and established course of life. We reversed the district court for failing to grant a new trial. *Renville*, ¶¶ 26-28.

¶29 *Thompson* and *Renville* differ substantially from the present case in that the juries in those cases found some injury had occurred to the plaintiffs as a result of the defendant's negligence. Here, the jury found Ele was not injured as a result of the accident with Ehnes. Therefore, *Thompson* and *Renville* are not applicable here.

¶30 Ele contends he offered undisputed medical evidence that he was injured in this accident because Ehnes did not refute Peterson's medical evidence that he was injured and sustained damages. On this record, as set forth above, Ele is incorrect. Peterson's direct testimony was undermined by both his own and Ele's testimony he had not been told of Ele's preexisting conditions, as well as by the testimony of Ele's co-workers.

¶31 Ele also claims that one medical bill, if caused by the accident, is enough to prove he sustained damages that should have been reimbursed in this admitted negligence case.

9

Quoting *Thompson*, 284 Mont. at 443, 945 P.2d at 50, for the proposition that "a jury is not free to disregard uncontradicted, credible, nonopinion evidence," he asserts that, at minimum, he should have been reimbursed for his bill from the emergency room just after the accident.

¶32 The *Thompson* quote on which Ele relies does not apply here. The emergency room bill is not direct evidence that the visit to the emergency room was caused by the accident; it merely establishes that Ele went to the emergency room. Nor is the alleged causal tie between the emergency room bill and the accident based on uncontradicted, credible, non-opinion evidence. Moreover, as stated above, it is the finder of fact which weighs the credibility of witnesses. *Magart*, ¶ 4. In other words, the jury could have deemed--and, in this case, almost certainly did deem--Ele's evidence that the accident caused his purported injuries not credible. Finally, even if uncontradicted direct testimony is admitted, the jury is entitled to weigh that testimony against adverse circumstantial evidence and other factors which may affect the credibility of the witness. *See Magart*, ¶ 15 (citation omitted).

¶33 Given the evidence of record, the jury in the present case could have found that Ele had prior back problems and could do more than he claimed he could. The jury also could have found that Peterson's opinion relied on an inaccurate medical history given him by Ele. Lastly, on this record, the jury could have found that the accident was so minor that Ele suffered no injury and his visit to the emergency room was unnecessary.

¶34 We hold that substantial credible evidence in the record supports the jury's verdict.

¶35 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART