No. 05-634

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 289

_____

HAROLD HOFFMAN and JAYNE HOFFMAN,

        Plaintiffs and Appellants,

    v.

JAMES MICHAEL AUSTIN and HOBO
TRUCKING, LLC,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and for the County of Lake, Cause No. DV 03-62,
                    The Honorable C. B. McNeil, Presiding Judge.

COUNSEL OF RECORD:

        For Appellants:

                James A. Manley and Ann L. Moderie, Manley Law Firm, Polson,
                Montana

                Greg L. Ingraham, Ingraham Law Office, Ronan, Montana

        For Respondents:

                Elizabeth O'Halloran and Lon J. Dale, Milodragovich, Dale, Steinbrenner
                & Binney, P.C., Missoula, Montana

_____

                    Submitted on Briefs:  September 7, 2006

                              Decided:  November 8, 2006

Filed:

_____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Harold Hoffman (Hoffman) and his wife, Jayne Hoffman (Jayne), appeal from the Order of the Twentieth Judicial District, Lake County, denying their motion for new trial or, alternatively, to alter or amend judgment. We affirm in part, reverse in part, and remand for a new trial on Hoffman's claim for damages for pain and suffering and mental and emotional distress.

¶2     Hoffman presents the following issues on appeal:

¶3     1.    Whether substantial evidence supports the jury's verdict on Hoffman's negligence.

¶4     2.    Whether substantial evidence supports the jury's verdict on Hobo Trucking, LLC's (Hobo Trucking) negligence.

¶5     3.    Whether substantial evidence supports the jury's award of zero damages for Hoffman's pain and suffering, mental and emotional distress, inability to pursue an occupation, reasonable value of services that Hoffman no longer can perform for himself, loss of capacity to pursue an established course of life, and loss of consortium to Jayne.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6     This personal injury action arose from a vehicle collision on Highway 93 between Ronan and Saint Ignatius in the early evening of October 4, 2002. Hoffman was driving southbound on Highway 93 in his Nissan Pathfinder. James Michael Austin (Austin) also was driving southbound on the highway, behind Hoffman, in a semi truck carrying 44,000 pounds of lumber. Hoffman stopped the Pathfinder on the two-lane highway to

2

turn left into a residential driveway. Austin failed to stop his truck in time and crashed into the rear of Hoffman's vehicle.

¶7 A bystander reported the accident to the Montana Highway Patrol. Officer Mitchell Voss (Officer Voss) responded and, after investigating the crash, determined that Austin's driving was the "main contributing factor" of the accident. He issued Austin a citation for careless driving, to which Austin later pled guilty.

¶8 Paramedics also responded and found Hoffman walking around the accident site. Hoffman felt "dazed," and the paramedics transported him to the hospital in Ronan for further treatment. Dr. Mikael Eugene Bedell (Dr. Bedell) noted that Hoffman, who was not wearing a seat belt in the crash, complained of hip discomfort and tingling in his neck and shoulder. Dr. Bedell noticed no outward signs of head trauma on Hoffman. He diagnosed Hoffman with cervical strain.

¶9 Hoffman filed a complaint against Austin and his employer, Hobo Trucking, on April 9, 2003. The complaint alleged that Hobo Trucking negligently hired and supervised Austin, and that Austin negligently and maliciously operated the truck. Hoffman sought damages for physical and mental injuries related to the crash. The complaint also included Jayne's claim for loss of consortium.

¶10 A jury trial began on May 16, 2005. The jury returned a special verdict on May 25, 2005, apportioning 50 percent of the negligence to Austin and 50 percent of the negligence to Hoffman. The jury denied Jayne's claim for loss of consortium and Hoffman's negligent supervision and hiring claim against Hobo Trucking.

¶11 The jury concluded that Austin's negligence caused Hoffman's injuries. The jury

3

awarded Hoffman damages in the amount of $149,610.39 for loss of future earning capacity and $112,164 for past and future health care costs. The jury awarded nothing to Hoffman for pain and suffering, mental and emotional suffering and distress, the reasonable value of services that Hoffman no longer can perform himself, the inability to pursue an occupation from the date of the accident until the trial, or the loss of capacity to pursue an established course of life.

¶12 Hoffman filed a motion for a new trial, or alternatively, to alter or amend the judgment on liability and damages. The District Court denied Hoffman's motion and concluded that substantial evidence supported the jury's verdict and damage award. Hoffman appeals the jury's verdict and the District Court's refusal to grant a new trial.

## STANDARD OF REVIEW

¶13 In reviewing the district court's refusal to grant a new trial based on the insufficiency of the evidence, we consider whether substantial credible evidence supports the jury's verdict. *Payne v. Knutson,* 2004 MT 271, ¶ 25, 323 Mont. 165, ¶ 25, 99 P.3d 200, ¶ 25. The determination of credibility and weight of the evidence lies within the province of the jury, and this Court "may not substitute its judgment as to the proper amount of damages for that of the jury simply because the jury chose to believe one party over another." *Moore v. Beye,* 2005 MT 266, ¶ 11, 329 Mont. 109, ¶ 11, 122 P.3d 1212, ¶ 11. As such, we view the evidence in the light most favorable to the prevailing party. *Moore.* ¶ 11. We will not reverse the district court's decision to grant or deny a motion for a new trial absent a manifest abuse of discretion. *Moore,* ¶ 9.

4

**DISCUSSION**

¶14    *Whether substantial evidence supports the jury's verdict on Hoffman's negligence.*

¶15    Hoffman asserts that no substantial credible evidence supports the jury's verdict that found him 50 percent negligent in the accident and that any such negligence caused his injuries.  Hoffman asserts that only Austin's incredible testimony supports the jury's verdict on his negligence.  Austin testified that he could not have avoided the collision because Hoffman had stopped abruptly in front of him and had failed to use his turn signal, thus providing no warning of Hoffman's rapid deceleration.

¶16    Hoffman argues that no reasonable jury could find Austin's testimony credible in light of contrary eyewitness testimony that Hoffman had used the turn signal and had stopped the vehicle for at least 15 seconds before Austin's logging truck approached and crashed into the Pathfinder.  Moreover, Hoffman's counsel raised several inconsistencies between Austin's testimony at trial and sworn statements that Austin had provided in an interrogatory response and in his deposition taken 14 months after the accident.  Hoffman argues that the evidence regarding his alleged negligence is not credible, thus the jury's verdict must be reversed.

¶17    Hoffman's potential negligence rested on two separate issues: first, whether Hoffman used his turn signal at all; second, whether Hoffman had signaled for the required distance in compliance with Montana law.  The District Court instructed the jury, in accordance with § 61-8-336, MCA, to assign negligence to any party who failed to signal less than 300 feet before making a turn in a non-urban area.  Hoffman does not

5

contest the court's instruction, but instead challenges the jury's conclusion that he acted negligently in the accident.

¶18 The record belies Hoffman's argument that no credible evidence supports the jury's finding of negligence. Hoffman testified that he began signaling "50 to 75 yards," or up to 225 feet, before stopping in front of the driveway. Even if the jury weighed the conflicting testimony and found that Hoffman had signaled before making the turn, Hoffman's uncontroverted testimony demonstrated that he failed to signal for the required 300 feet. We long have held that "a jury is not free to disregard uncontradicted, credible, nonopinion evidence." *Thompson v. City of Bozeman,* 284 Mont. 440, 443, 945 P.2d 48, 50 (1997). As such, we conclude that Hoffman's admission that he failed to signal for the full 300 feet as required by Montana law presents substantial credible evidence to support the jury's finding on Hoffman's negligence. We refuse to reverse a jury verdict supported by substantial credible evidence. *Moore,* ¶ 8.

¶19 Hoffman challenges next the jury's determination that his negligence caused his own injuries. Hoffman argues that the distance he signaled, even if not in compliance with Montana law, had no relevance in proving that such an act caused his injuries. Hoffman contends that Austin did not see the Pathfinder until it already was stopped in the roadway and any signaling before the stop would have been ineffective. He asserts that only Austin's careless driving could have caused the accident and, therefore, the jury's verdict must be reversed.

¶20 Conflicting evidence surfaced at trial, however, as to whether Hoffman stopped abruptly in the southbound traffic lane just ahead of Austin and we will not "retry a case

6

because the jury chose to believe one party over another." *Renville v. Taylor,* 2000 MT 217, ¶ 14, 301 Mont. 99, ¶ 14, 7 P.3d 400, ¶ 14. Hoffman testified that he stopped his vehicle in the road for some time before being struck by Austin's truck. A driver approaching from the northbound lane also testified he saw Hoffman's Pathfinder stopped for about "15 to 20 seconds" before the collision occurred. Hoffman contends that this testimony combined with Officer Voss's determination that the Pathfinder left no skid marks in the road before the collision demonstrated that Hoffman had not stopped abruptly in the roadway and that Austin could have avoided the Pathfinder if he had paid closer attention to his driving.

¶21 Austin testified that he was traveling just behind Hoffman's Pathfinder at about 50 miles per hour when the Pathfinder suddenly stopped without warning. Austin testified he attempted to pass in the northbound lane but decided against it when he realized that Hoffman might turn into his path. Austin further testified that he applied the truck's brakes but, because of Hoffman's hasty deceleration, he could not get the logging truck stopped in time. Hoffman's lawyer attacked Austin's credibility, pointing out that Austin's version of the events had changed over time. Austin explained to the jury, however, that he had visited the accident site about a week before trial and that the visit had helped him remember the events more clearly.

¶22 The jury determines the weight and credibility of the evidence. *Moore,* ¶ 11. It is not the function of this Court to agree or disagree with the jury's verdict and, if conflicting evidence exists, we will not retry the case because the jury chose to believe

7

one party over another. *Renville, ¶* 14. Even inherently weak and conflicted evidence may be viewed as substantial. *Moore, ¶* 8.

¶23 Moreover, Austin elicited testimony from Officer Voss that no physical evidence refuted Austin's position that Hoffman had stopped suddenly on the highway. Officer Voss also testified on the importance of signaling for the required length of time on that particular stretch of Highway 93, because a lack of turning lanes forces traffic to come to a halt whenever a vehicle attempts to leave the highway.

¶24 We must view the evidence in the light most favorable to Austin. *Moore, ¶* 11. As a result, we conclude that the jury could have found, in weighing the conflicting testimony, that Hoffman's violation of Montana's turn signal law contributed to the cause of the crash and his own injuries. An abuse of discretion occurs where the court grants a new trial when conflicting evidence exists on an issue. *Thompson,* 284 Mont. at 442, 945 P.2d at 49. Consequently, we conclude that the District Court properly denied Hoffman's motion for new trial on the issue of Hoffman's negligence.

¶25 *Whether substantial evidence supports the jury's verdict on Hobo Trucking, LLC's negligence.*

¶26 Hoffman argues that the jury's verdict contradicts the evidence on Hobo Trucking's negligence in hiring and supervising Austin. The jury may not disregard uncontradicted, credible, nonopinion evidence. *Thompson,* 284 Mont. at 443, 945 P.2d at 50. The jury may weigh uncontradicted direct testimony, however, against adverse circumstantial evidence and other factors that may affect the credibility of the witness. *Ele v. Ehnes,* 2003 MT 131, ¶ 32, 316 Mont. 69, ¶ 32, 68 P.3d 835, ¶ 32.

8

¶27 Hoffman relied solely on Austin's testimony to prove his negligent hiring and supervision claim against Hobo Trucking, which Austin's father owned and operated at the time of the accident. Hoffman presented Austin's testimony that he had accumulated several speeding tickets and was involved in numerous accidents during his three-year career as a truck driver. Austin further admitted that his father failed to provide him with written safety guidelines, formal safety courses, and ride-along training sessions, as Austin's previous employers had provided. Hoffman contends that Austin's testimony points to Hobo Trucking's failure to maintain its duty of care in hiring and supervising Austin and that the jury's verdict cannot stand in light of the uncontroverted evidence.

¶28 Austin counters, however, that his testimony also explained adequately his driving record and demonstrated that his father had provided safety training. Austin testified that, despite the many driving infractions, he never received a speeding ticket for driving more than 10 miles over the speed limit. Austin further explained that two of the accidents about which Hoffman's lawyer questioned him concerned circumstances out of his control. For instance, one accident involved a mechanical failure in the truck's brakes and another accident involved a gas explosion sparked by static electricity.

¶29 Austin also testified that his father checked his driving record before offering him a job. Austin explained that his father talked to him personally about safety and always made himself available by telephone when questions arose about safety procedures on the road. Austin further testified his father verbally warned him about his speeding tickets and threatened to fire him if such infractions continued. Austin recalled that his father made him take a drug test following the accident with Hoffman.

9

¶30    Substantial evidence supports the jury's verdict finding no liability on the part of Hobo Trucking.  Hoffman relied solely on Austin's testimony that simply illuminated Austin's deplorable driving record and pointed out that Hobo Trucking's training practices differed from other companies.  Hoffman presented no evidence, however, that Hobo Trucking's lack of training and supervision served as the cause his injuries.  In fact, Austin testified that he had attended training at a six-week truck driving school before securing employment as a driver and that he was not speeding at the time of the accident.  Moreover, Hoffman's counsel admitted during his examination of Austin that Hobo Trucking met "the minimal requirements of the federal government" by checking Austin's driving record before hiring him and requiring Austin to submit to a drug test following the accident.

¶31    The jury weighed Austin's uncontradicted, direct testimony "against adverse circumstantial evidence and other factors which may affect the credibility of the witness." *Ele,* ¶ 32.  Based on the evidence presented, the jury could have concluded that Hoffman failed to show that Hobo Trucking breached its duty of care in supervising or training Austin or failed to show that any breach caused Hoffman's injuries.  As such, we conclude that substantial evidence supports the jury's verdict, assigning no liability to Hobo Trucking.

¶32    *Whether substantial evidence supports the jury's award of zero damages for Hoffman's pain and suffering, mental and emotional distress, inability to pursue an occupation from the time of the accident to the end of trial, the reasonable value of*

10

*services that Hoffman no longer can perform for himself, loss of capacity to pursue an established course of life, and loss of consortium to Jayne.*

¶33 Hoffman contends that the jury improperly ignored uncontradicted, credible, nonopinion evidence on his pain and suffering, mental and emotional distress, inability to pursue an occupation from the time of the accident until the end of trial, the reasonable value of services that Hoffman no longer can perform for himself, loss of capacity to pursue an established course of life, and loss of consortium to Jayne. Hoffman asserts that we must reverse the jury's verdict awarding zero damages on these claims in light of our decision in *Renville*, in which we stated that "although it is within the jury's province to weigh the evidence and determine credibility, a jury is not free to disregard uncontradicted, credible, nonopinion evidence." *Renville*, ¶ 26.

¶34 We address first Hoffman's claim for damages related to his pain and suffering and mental and emotional distress. Hoffman argues that he presented extensive expert and lay witness testimony on the mental distress and pain that he experienced after the accident. Hoffman points out that no fewer than eight medical professionals provided reports referring to his intense headaches and back pain resulting from the crash. Hoffman also claims that, due to the crash, he suffered from depression for which he had to be medicated. Hoffman presented witness testimony confirming that he suffered from depression, mood swings, constant headaches, and back pain after the accident. Hoffman contends that the jury's verdict conflicts with its award of zero damages for pain and suffering and mental and emotional distress in that the jury determined that Austin's negligence caused his injuries.

11

¶35 Austin counters that conflicting evidence prevented the jury from awarding damages to Hoffman on his claims for pain and suffering and mental and emotional distress. Hoffman's emergency room physician, Dr. Bedell, testified that Hoffman exhibited no outward signs of head trauma immediately after the accident. Dr. Bedell opined that Hoffman's post-accident headaches could be attributed to a "number of reasons," including Hoffman's neck injury, medication, or "something completely unrelated" to the accident. Hoffman's former girlfriend also testified that Hoffman had suffered back and neck injuries in horse accidents in 1990 and 1993, placing in question whether preexisting injuries caused Hoffman's pain. Moreover, two medical doctors testified that Hoffman exhibited symptoms of a compression fracture, an injury inconsistent with the dynamics of a rear-end crash. Austin argues that the jury properly weighed the uncontradicted, direct testimony "against adverse circumstantial evidence and other factors which may affect the credibility of the witness," as required by our decision in *Ele,* ¶ 32.

¶36 We find Austin's reliance on *Ele* misplaced. In *Ele,* the jury awarded zero damages because it determined that the plaintiff suffered no injury. The plaintiff in that case claimed to have been injured in a low-speed vehicle collision. The defendant admitted negligence, but challenged the plaintiff's claim for damages. *Ele,* ¶¶ 5-7. The jury concluded that the plaintiff suffered no injury. *Ele,* ¶ 16. On appeal, we upheld the jury's verdict and zero damages award. We determined that the jury weighed the evidence and could have determined that plaintiff's injury pre-existed the accident, that the plaintiff could engage in more physical activity than he admitted, or that the

12

plaintiff's visit to the emergency room was unwarranted due to the crash's low impact on the vehicle. *Ele,* ¶¶ 33-34.

¶37 In contrast to *Ele*, the jury in this case determined that Austin's negligence caused some part of Hoffman's injuries. The jury returned a special verdict granting Hoffman damages in the amount of $149,610.39 for loss of future earning capacity and $112,164 for past and future health care costs. In light of the jury's determination that Austin's negligence constituted a cause of Hoffman's injuries, we conclude that our decisions in *Thompson,* 284 Mont. 440, 945 P.2d 48, and *Renville,* ¶¶ 25-26, control our analysis here.

¶38 In *Thompson,* plaintiff filed an action to recover for personal injuries that she suffered when a Bozeman police officer rear-ended her vehicle with his police car. Similar to *Ele,* the police officer admitted his negligence but contested the plaintiff's claim for damages. *Thompson,* 284 Mont. at 441, 945 P.2d at 49. The jury determined that plaintiff had suffered some injury, but denied plaintiff's award for pain and suffering, even though plaintiff had presented uncontroverted evidence that she suffered from pain. *Thompson,* 284 Mont. at 442, 945 P.2d at 49. On appeal, we upheld the district court's grant for new trial. We determined that insufficient evidence supported the jury's award of zero damages where the officer failed to controvert the existence of plaintiff's pain and suffering and only challenged the cause and source of any pain and suffering. We concluded that the jury had resolved these causation issues in its verdict in the plaintiff's favor. *Thompson,* 284 Mont. at 446-47, 945 P.2d at 52.

¶39 Likewise, in *Renville,* we determined that the jury's inconsistent conclusions warranted a new trial. The jury determined that the defendant's negligence caused the

13

plaintiff's injury, yet the jury limited its award of damages to past medical expenses. *Renville,* ¶ 1. The jury limited its award even though plaintiff presented uncontroverted evidence of other damages, including pain and suffering, future medical expenses, loss of earning capacity, and loss of ability to pursue her occupation and an established course of life. *Renville, ¶¶* 25-26.

¶40 Similar to *Thompson* and *Renville,* the jury here resolved the conflicting evidence on causation and ultimately determined that Austin's negligence constituted a cause of Hoffman's injuries. Although Hoffman never testified directly regarding his pain and suffering or mental anguish, the uncontroverted evidence revealed that Hoffman suffered from depression and that he endured pain following the accident.

¶41 Austin never disputed that Hoffman suffered from pain or mental distress. Instead, Austin presented evidence that questioned only the source and extent of any pain and emotional distress. Once the jury resolved the conflicting evidence and concluded that Austin's negligence, in fact, caused Hoffman's injuries, the jury was not free to disregard the uncontradicted non-opinion evidence that Hoffman had suffered from pain and mental distress. *Renville, ¶* 26. We conclude that the jury improperly ignored such evidence, thus warranting a new trial as to Hoffman's damages for pain and suffering and mental and emotional distress.

¶42 We now turn to Hoffman's claims for damages related to his inability to pursue an occupation from the time of the accident until the jury verdict, reasonable value of services that Hoffman no longer can perform for himself, and his loss of capacity to pursue an established course of life. We determine that Austin successfully controverted

14

the existence of these damages, and that the jury's verdict represents its decision that Hoffman's claims for these particular damages were implausible.

¶43    Hoffman contends that the accident forced him to abandon his chosen profession as a horse trainer. Austin presented considerable contrary evidence. Lynne Keil (Keil) testified that she had hired Hoffman to train one of her race horses in April, May, June and July of 2004. Hoffman never disclosed to her that someone else would participate in the training. Keil recalled that, at the horse's first race in Great Falls, she noticed that the program listed Sid Billingsley (Billingsley) as trainer. Keil testified that she questioned Hoffman about the change and that Hoffman replied that he had "a lawsuit going on that involved a settlement of some kind and that he didn't want to have his name officially in the program where he was the trainer." Hoffman assured her that he trained the horse. The horse went on to win two of the next three races.

¶44    Billingsley, an experienced horse trainer and acquaintance of Hoffman, testified that the race programs listed him as a trainer for at least four race horses that Hoffman had trained. Billingsley recalled that the horses raced successfully in the 2004 season and that he considered Hoffman a competent trainer.

¶45    Austin also presented expert witness testimony from Parke Edwards (Edwards), a veteran horse trainer, who stated most of the duties from which Hoffman claims to be restricted routinely are performed by horse grooms and other staff. Edwards testified that trainers typically hire someone else to gallop the horse for conditioning and that horse trainers usually do not ride the horse themselves. He further explained that trainers oversee the maintenance of the horse during race season, such as feeding and grooming.

15

He also testified that the trainer completes the race-day paperwork and decides who will jockey the horse.

¶46 We determine that the jury properly weighed the conflicting evidence on Hoffman's horse training career following the accident, and likely concluded that Hoffman suffered no such damages. Austin presented uncontroverted testimony that Hoffman covertly and successfully carried on his horse training business under Billingsley's name following the accident. The jury could have, and most likely, concluded from this evidence that the accident did not prevent Hoffman from pursuing his occupation or an established course of life in his career as a horse trainer. The evidence presented also substantially supports the jury's verdict that Hoffman suffered no injury that prevented him from performing services that he used to perform for himself. Granting a new trial where conflicting evidence arose at trial would have constituted an abuse of the court's discretion. *Thompson,* 284 Mont. at 442, 945 P.2d at 49. We will not disturb the jury's award of damages just because the jury chose to believe one party over another. *Moore, ¶* 11.

¶47 Hoffman next argues that the jury's verdict denying Jayne's claim for loss of consortium contradicts the evidence. The parties presented conflicting evidence, however, as to Jayne's claim for loss of consortium. Neither Jayne nor Hoffman testified as to the accident's impact on their relationship. Jayne relied instead on the testimony of her daughter and other family members that Hoffman's behavior toward her had changed dramatically after the accident. The daughter described Hoffman as a loving and caring

16

man who became "cold and distant" after the accident. She said Hoffman became "snappy" toward Jayne when he ordinarily had been patient and calm.

¶48 Austin countered with testimony from Hoffman's former girlfriend who testified that she had lived with Hoffman from 1989 to 1993. She described Hoffman as irritable before the accident. Keil also testified that everyone in the horse racing community knew of Hoffman's temperamental personality, and that Hoffman had acted unreasonably in other situations over the years.

¶49 The jury apparently weighed this evidence and specifically concluded that Austin's negligence did not cause Jayne's injuries. The jury sits in the best position to weigh the contradicted testimony and we will not retry a case simply because the jury decided to believe one party over another. *Moore,* ¶ 11. We determine that the District Court properly denied Hoffman's motion for new trial on the issue of Jayne's claim for loss of consortium. *See Thompson,* 284 Mont. at 442, 945 P.2d at 49.

## CONCLUSION

¶50 We reverse the District Court and remand for a new trial on the limited question of Hoffman's damages for pain and suffering and mental and emotional distress. We affirm the District Court's denial of Hoffman's motion for new trial on all other issues.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

17

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JOHN WARNER