No. DA 06-0091

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 97

_____

BARBARA JEAN SEELEY,

      Plaintiff and Appellant,

   v.

KREITZBERG RENTALS, LLC,

      Defendant, Respondent, and
      Cross-Appellant.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone, Cause No. DV 03-1314,
                The Honorable Ingrid Gustafson, Presiding Judge.

COUNSEL OF RECORD:

      For Appellant:

            James G. Edmiston, III, Edmiston, Schermerhorn & Colton, Billings,
            Montana

      For Respondent/Cross-Appellant Kreitzberg Rentals:

            Brad H. Anderson and Jessica K. Fehr, Moulton, Bellingham, Longo &
            Mather, P.C., Billings, Montana

_____

Submitted on Briefs:  January 10, 2007

Decided:  April 17, 2007

Filed:

_____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Barbara Jean Seeley (Seeley) appeals from an order of the Thirteenth Judicial District, Yellowstone County, denying her motion to alter the judgment and for a new trial on damages. Kreitzberg Rentals, LLC, (Kreitzberg) filed a contingent cross-appeal to be addressed in the event that we reverse. We affirm the District Court's denial of Seeley's motion to alter judgment and for a new trial on damages. We decline to address Kreitzberg's contingent cross-appeal.

¶2    Seeley presents the following issues for review:

¶3    1.    Whether substantial credible evidence supports the jury's verdict that Kreitzberg's negligence did not cause Seeley's fall and injuries.

¶4    2.    Whether the District Court properly allowed evidence of a lack of prior accidents on Kreitzberg's property before Seeley's fall and evidence that Kreitzberg spent more than $80,000 in improvements on the property after Seeley fell.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    Seeley broke her ankle on March 3, 2003, when she slipped and fell outside of her office on Broadwater Avenue in Billings, Montana. Seeley filed a complaint against Kreitzberg, the owner of the property, on December 17, 2003. The complaint alleged that the building's defective rain-gutter design and Kreitzberg's negligence in failing to remove ice and snow from the walkway caused her injuries.

¶6    Kreitzberg denied the allegations of negligence. Kreitzberg also alleged that any damages suffered by Seeley resulted from her own negligence. Kreitzberg then filed a third-party complaint against John Gilbertson (Gilbertson), whom Kreitzberg hired to

2

remove snow and ice from its Broadwater Avenue property. The third-party complaint also named various other contractors who designed, built, or maintained Kreitzberg's building. The court dismissed all third-party defendants before trial.

¶7 Seeley filed a pre-trial motion with the court to exclude certain evidence. Seeley first sought to exclude evidence that no other person had slipped and fallen on Kreitzberg's property and that Kreitzberg had received no complaints about the condition of its parking lots or walkways before Seeley's fall. Seeley also sought to exclude evidence of repairs that Kreitzberg had made to the building after Seeley's fall. The court denied Seeley's motion.

¶8 A jury trial began on October 24, 2005. Seeley testified that the weather was "snowing and cold" when she walked out of her office at noon on March 3, 2003, to warm up her car. Seeley stated that she stepped on a patch of ice near a downspout to the building's gutter system while on her way to her car and that her feet "flew out from underneath" her. Seeley fell to the ground and could not get up.

¶9 Robin Hanel (Hanel), Seeley's co-worker, testified that she and a client ran outside to help Seeley. Hanel further testified that, once she helped Seeley into the office, she bought a camera so that she could "document" that Seeley fell on ice. The court admitted the pictures into evidence. The pictures show that winter weather conditions existed on the day of Seeley's fall. Snow covered most of the parking lot and a portion of the walkway outside of Kreitzberg's commercial building. The pictures also illustrate the proximity of the gutter's downspout to the snow-covered walkway where Seeley fell.

3

¶10 Darrell Kreitzberg, the principal officer of Kreitzberg Rentals, LLC, testified that he first noticed drainage problems at the building in 1998 or 1999. Kreitzberg stated that cars repeatedly had damaged the downspouts to the roof's gutter system. He hired contractors to redesign three of the five downspouts on the building to run under the walkway to solve the drainage problems. Kreitzberg admitted that the downspout nearest to Seeley's fall had not been re-routed under the sidewalk because it was located in an area with minimal foot traffic. Kreitzberg also admitted that water from the downspout drained directly onto the walkway and into a groove in the cement before draining to a grassy area. He testified that he had approved of this design, because he wanted the water to drain away from the parking lot.

¶11 Kenneth Mielke (Mielke), a former meteorologist for the National Weather Service and an expert witness retained by Kreitzberg, testified that a cold front hit Billings on March 3, 2003. Mielke's testimony revealed that the bulk of the inclement weather associated with the cold front passed through Billings between 8 a.m. and 11 a.m., just about an hour before Seeley's fall. Mielke further testified that the National Weather Service reported wind gusts topping 23 miles per hour and light, steady snow falling throughout the day. Mielke stated that the recorded temperature at the time of Seeley's fall was about 16 degrees Fahrenheit.

¶12 The jury returned a verdict in favor of Kreitzberg on October 26, 2005. The jury found Kreitzberg negligent, but determined that Kreitzberg's negligence had not caused Seeley's fall and injuries. The court entered judgment in favor of Kreitzberg and ordered Seeley to pay Kreitzberg's costs in the matter. Seeley filed a motion with the District

4

Court to alter the judgment and for a new trial on damages. The court, although "baffled" by the jury's verdict, denied Seeley's motion. The court concluded that the jury could have found that natural weather conditions caused Seeley's fall rather than any conditions created by Kreitzberg's negligent conduct. Seeley appeals the jury's verdict and the District Court's denial of her motion to alter the judgment and for a new trial on damages. Seeley also appeals the court's denial of her pre-trial motion to exclude evidence from trial.

## STANDARD OF REVIEW

¶13 We exercise an extremely limited review of jury verdicts. *Morgan v. Great Falls School Dist. No. 1*, 2000 MT 28, ¶ 8, 298 Mont. 194, ¶ 8, 995 P.2d 422, ¶ 8. We refuse to overturn a jury verdict supported by substantial credible evidence. Substantial credible evidence means evidence that "a reasonable mind might accept as adequate to support a conclusion." Even weak and conflicting evidence may be deemed substantial to support a jury's verdict. *Morgan*, ¶ 8. The determination of credibility and weight of the evidence lies within the province of the jury. *Moore v. Beye,* 2005 MT 266, ¶ 8, 329 Mont. 109, ¶ 8, 122 P.3d 1212, ¶ 8. We must view the evidence, therefore, in the light most favorable to the prevailing party. *Moore*, ¶ 8. We will not reverse the district court's decision to grant or deny a motion for a new trial absent a manifest abuse of discretion. *Moore,* ¶ 9.

¶14 The district court maintains broad discretion in determining the admissibility of evidence. *In re T.W.*, 2006 MT 153, ¶ 8, 332 Mont. 454, ¶ 8, 139 P.3d 810, ¶ 8. We refuse to overturn the district court's evidentiary rulings absent an abuse of the court's

5

discretion. *Kissock v. Butte Convalescent Center*, 1999 MT 332, ¶ 10, 297 Mont. 307, ¶ 10, 992 P.2d 1271, ¶ 10.

## DISCUSSION

¶15 *Whether substantial credible evidence supports the jury's verdict that Kreitzberg's negligence did not cause Seeley's fall and injuries.*

¶16 Seeley argues that Kreitzberg admitted that the downspout caused Seeley's fall and injuries, and thus the jury should have been prevented from reaching any other conclusion. Counsel for Kreitzberg stated in his opening statement: "We admit, Darrell and I, we have never really contested that the downspout may have been, and probably was, a contributing factor to her fall. She certainly fell there, near the base of the downspout." Seeley contends that counsel's statement constituted a judicial admission from which Kreitzberg cannot retreat. Seeley also maintains that, aside from the judicial admission, no evidence exists to support the jury's verdict that something other than Kreitzberg's negligence caused her fall and injuries.

¶17 We first note that counsel's statement does not constitute a judicial admission. A judicial admission represents "an express waiver made in court by a party or his attorney" that concedes the truth of an alleged fact for the purposes of trial. *Kohne v. Yost*, 250 Mont. 109, 112, 818 P.2d 360, 362 (1991). A party remains bound by a judicial admission only if the admission constitutes an unequivocal statement of fact. *Kohne*, 250 Mont. at 112, 818 P.2d at 362. Counsel's statement, although prefaced with the language of an admission, merely acknowledged that the downspout "*may have been, and probably was*" one of the many possible contributing factors in Seeley's fall. (Emphasis added).

6

Counsel then presented other factors for the jury to consider in deciding what caused Seeley's fall, including Seeley's inattentiveness and the natural weather conditions. The statement, when considered in context with counsel's complete opening remarks, never unequivocally conceded that the downspout hazard constituted a substantial factor that caused Seeley's fall. The statement alone cannot constitute a binding judicial admission as to what caused Seeley's fall and injuries. The element of causation properly fell within the province of the jury.

¶18 Seeley next argues that no evidence supports the jury's verdict that Kreitzberg's negligence did not cause her fall and injuries. The record shows, however, that the parties presented conflicting evidence on causation. Seeley testified that she walked out the front door of her office and along the covered walkway toward her car. Seeley stated that she slipped on ice near the downspout that had not been rerouted under the walkway. Seeley also presented photographs taken by Hanel on the day of her fall. The photographs depict a snowy walkway and some ice formation at the bottom of the downspout.

¶19 Seeley then admitted on cross examination that she had not paid attention to the conditions when she walked out to her car. Seeley further testified that she had not been wearing a coat when she ventured into the 16-degree weather to start her car. Kreitzberg argued that Seeley's failure to wear a coat caused her to hurry to escape the cold weather. Seeley denied such a claim.

¶20 Kreitzberg also presented evidence that natural weather conditions, rather than the downspout, caused Seeley's fall. Mielke, a former meteorologist, testified that the

7

inclement weather struck Billings the morning of Seeley's fall and continued throughout the day. Mielke also testified that gusty winds likely would have caused blowing snow to accumulate on the covered walkway outside of Seeley's office on Kreitzberg's property. Hanel's photographs showing a snow-covered walkway despite the fact that a roof sheltered the walkway from the weather supported Mielke's testimony.

¶21 The determination of the weight and credibility of the evidence lies within the province of the jury. *Campbell v. Canty*, 1998 MT 278, ¶ 19, 291 Mont. 398, ¶ 19, 969 P.2d 268, ¶ 19. We defer to the jury's decisional role, keeping in mind its function to make "'difficult and uniquely human judgments that defy codification and that build discretion, equity, and flexibility into a legal system.'" *Seltzer v. Morton*, 2007 MT 62, ¶¶ 94-96 n. 8, 336 Mont. 225, ¶¶ 94-96 n. 8, ___ P.3d ___, ¶¶ 94-96 n. 8 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 311, 107 S. Ct. 1756, 1777 (1987)). Although a jury verdict may be difficult to explain, the lack of predictability in the jury's judgment does not warrant reversal of the jury's verdict. *Seltzer*, ¶ 96 n. 8. It is not the function of this Court to agree or disagree with the jury's decision and, if conflicting evidence exists, we refuse to retry a case simply because the jury chose to believe one party over another. *Hoffman v. Austin*, 2006 MT 289, ¶ 22, 334 Mont. 357, ¶ 22, 147 P.3d 177, ¶ 22. We exercise very limited review of the jury's verdict, considering only whether substantial, credible evidence exists in the record to support the jury's findings. *Seltzer*, ¶ 94.

¶22 The jury weighed the conflicting evidence that Kreitzberg's defective design of the downspout caused Seeley's fall against other evidence that Seeley's haste and carelessness caused her to fall on ice and snow that had accumulated in the recent storm

that struck Billings shortly before the accident. The jury apparently attributed Seeley's haste and carelessness as the cause of her fall. The evidence supporting such a finding in this case may be weak and conflicting, but substantial enough to support the jury's verdict when viewed in the light most favorable to Kreitzberg. *Campbell*, ¶ 18. We refuse to disturb the jury's verdict unless its findings are "inherently impossible to believe." *Campbell*, ¶ 19. We conclude that the jury's findings are not inherently impossible to believe given the competing evidence presented on the issue of causation. The District Court properly denied Seeley's motion to alter the judgment and for a new trial on damages.

¶23    *Whether the District Court properly allowed evidence of a lack of prior accidents on Kreitzberg's property before Seeley's fall and evidence that Kreitzberg spent more than $80,000 in improvements on the property after Seeley fell.*

¶24    Seeley argues first that the District Court abused its discretion in allowing Kreitzberg to testify that he received no previous complaints about the hazardous condition before Seeley's fall on March 3, 2003. Seeley admits that evidence of previous injuries occurring in the same location may be relevant under M. R. Evid. 401 to show whether the defendant had notice of the dangerous condition if such accidents happened under similar circumstances. *See Kissock*, ¶ 15. Seeley contends, however, that evidence of the lack of previous falls or complaints is irrelevant because it fails to disprove negligent conduct.

¶25    Seeley also argues that the District Court improperly admitted evidence of Kreitzberg's subsequent remedial measures. Kreitzberg testified at trial that he hired a

9

contractor to install heat tape and an automatic boiler system in the parking lot at the Broadwater Avenue property after Seeley's fall. Kreitzberg further testified that the improvements cost more than $80,000 to install and about $1,900 per month to operate in the winter months. Seeley contends that Kreitzberg's testimony should have been excluded as irrelevant under M. R. Evid. 403. Seeley also argues that the repairs constituted a subsequent remedial measure and should have been excluded under M. R. Evid. 407. Seeley maintains that the evidence prejudiced her in that it allowed Kreitzberg to offer self-serving statements that improperly influenced the jury.

¶26 The district court maintains broad discretion in determining whether evidence is relevant and admissible. *Kissock*, ¶ 10. We review a court's evidentiary rulings to determine whether the court abused its discretion by acting arbitrarily without conscientious judgment or in excess of the bounds of reason. *Seltzer*, ¶ 65. An abuse of discretion does not constitute reversible error absent prejudice. *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 28, 316 Mont. 469, ¶ 28, 74 P.3d 1021, ¶ 28.

¶27 We need not reach the issue of whether the court abused its discretion in allowing Kreitzberg's testimony on the lack of prior accidents and subsequent remedial measures taken after Seeley's fall as the evidence caused no prejudice to Seeley. Seeley challenges both evidentiary issues on grounds that the testimony improperly influenced the jury's determination of Kreitzberg's negligence. The jury concluded that Kreitzberg was negligent, however, despite hearing Kreitzberg's allegedly bolstering testimony. Seeley could not have been prejudiced as the jury returned a verdict on the issue of Kreitzberg's

10

negligence in her favor. Any abuse of discretion committed by the court could not constitute reversible error absent prejudice. *Christofferson*, ¶ 28.

¶28    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE