No. 99-234

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 217

MARIA RENVILLE,

Plaintiff and Appellant,

v.

URSULA TAYLOR,

Defendant and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Dennis P. Connor, Attorney at Law, Great Falls, Montana

For Respondent:

William J. Gregoire, Smith, Walsh, Clark & Gregoire, Great Falls,

Montana

Submitted on Briefs: February 17, 2000

Decided: August 11, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiff, Maria Renville, brought this action in the District Court for the Eighth Judicial District in Cascade County, to recover damages from the Defendant, Ursula Taylor, for injuries suffered in an automobile collision. Following a jury trial, the jury found in favor of Renville, and awarded damages in the amount of $17,553. Renville moved for a new trial, based on insufficiency of evidence to justify the verdict and irregularities in the proceedings. Renville also requested sanctions against Taylor for violation of the District Court's order in limine which excluded certain evidence and for improper closing argument. These motions were denied by operation of law. Renville now appeals the jury's verdict and the District Court's denial of her motion for a new trial and sanctions. We reverse the judgment of the District Court.

¶2 We find the following issues dispositive:

¶3 1. Was the jury's damage award supported by substantial evidence?

¶4 2. Should Taylor have been sanctioned for misconduct by her attorney?

## FACTUAL BACKGROUND

¶5 On April 1, 1995, the Plaintiff, Maria Renville, was riding as a passenger in Matthew MacDonald's 1984 Mazda pickup truck. MacDonald was traveling west on 36th Avenue Northeast in Great Falls, Montana, when he stopped for traffic at the intersection with Ninth Street Northeast. The Defendant, Ursula Taylor, was also driving west on 36th Avenue Northeast in her 1987 Ford Taurus. Taylor was traveling directly behind MacDonald and failed to stop when MacDonald stopped. Taylor's vehicle collided with the rear end of MacDonald's truck. MacDonald's truck was not equipped with head rests and the force of the collision caused Maria's head to snap back and hit a piece of metal near the passenger side rear window.

¶6 Following the accident, Maria was treated for cervicothoracic and lumbosacral strain injuries, myofascial pain syndrome, and a major depressive disorder with mood and anxiety disturbance affecting her myofascial pain syndrome and muscle contraction

headaches. Maria's treatment has been extensive and ongoing, and at the time of trial, in December 1998, her past medical expenses had exceeded $17,357.

¶7 Maria's father, Robert Renville, suffers from a severely disabling disease of the spinal cord, known as Ankylosing Spondylitis. Robert is an incomplete quadriplegic as a result of his spinal disease. Prior to Maria's accident, her father's doctors suggested that she be tested for the disease, which is hereditary. On February 3, 1995, the results of Maria's blood test were received by the Renvilles. Her blood was found to be positive for HLAB-27, the gene marker for Ankylosing Spondylitis. As a result of the positive blood test, Maria's mother and father believed that she also had the disease.

¶8 On February 9, 1995, Maria's mother, Janice Renville, brought her to see Dr. Sweeney. Dr. Sweeney wrote the following in his notes:

> Mother was worried that the patient due to having back pain on and off for a few years was developing this [Ankylosing Spondylitis] also and she is wondering if she would be eligible for disability. She is presently going to Job Search and she has to do a lot of walking looking for a job to qualify for her welfare check and mother thinks it is making her back pain worse.

Dr. Sweeney referred Maria to Dr. Susan Effertz, a rheumatologist, for additional evaluation.

¶9 On March 29, 1995, Janice brought her daughter to see Dr. Effertz. Janice testified that she filled out the majority of the patient forms, including a form which stated that Maria had Ankylosing Spondylitis and suffered from Juvenile Arthritis. Dr. Effertz's notes report the following impression:

> Social situation, in which a declaration of some kind of arthritis or disability would make it a lot easier for her to continue getting her welfare check, but would also, I think, discourage her from getting her GED and participating in society in a normal fashion.

Dr. Effertz's notes also state as follows:

> The mother describes enthusiastically the patient's father, who is said to have such severe ankylosing spondylitis at age 42 that he keeps his head tucked in in a certain

way and is tremendously disabled . . . . They expect Maria to end up the same and she probably is disabled. Surely she must have some kind of arthritis, the mother feels, because she has pain, pain in the neck and mid back and low back. There is no history of injury . . . . In fact, the entire interview was quite bizarre and unique. Not by subtlety or by tricks of eye contact nor by, eventually and desperately, my barking out commands to the mother to be quiet and let the girl answer, could I ever get an interview with the subject. The mother does volunteer that the girl has had the back pain for 2 or 3 years.

¶10 Dr. Effertz's examination of Maria three days before her accident disclosed nothing out of the ordinary. Dr. Effertz also attempted to explain to Maria's mother that 5 to 10 percent of the population tests positive for the Ankylosing Spondylitis gene marker HLAB-27, and that a positive blood test only determines susceptibility for the disease. It does not indicate that a patient actually has the disease.

¶11 Prior to trial, on October 20, 1998, Maria's attorney moved in limine for an order prohibiting Taylor from offering testimony or otherwise referring to hearsay statements in Maria's medical records, which were not attributable to Maria. He specifically sought to exclude statements regarding welfare, and statements made by Maria's mother, Janice.

¶12 In the November 30, 1998, Pretrial Order the parties agreed that "Defendant Ursula Taylor admits that she was at fault and negligently caused the accident between the MacDonald vehicle and her vehicle." Accordingly, the only issues submitted to the jury were whether the accident caused injuries to Maria and, if so, the amount of her damages.

¶13 On December 10, 1998, the jury returned a verdict which found that the accident on April 1, 1995, did cause injury to Maria, and that she sustained damages in the amount of $17,553. Even though the jury was instructed to award damages for past and future medical expense, loss of earnings and earning capacity, pain and suffering, loss of ability to pursue an occupation, and loss of ability to pursue an established course of life, the jury's general verdict was limited to the amount of the past medical expenses.

## STANDARD OF REVIEW

¶14 The function of this Court is not to agree or disagree with a jury's verdict. This Court's role is to determine whether there was substantial evidence to support the verdict. *Brockie*

*v. Omo Const., Inc.* (1994), 268 Mont. 519, 522, 887 P.2d 167, 169. If conflicting evidence exists, we do not retry a case because the jury chose to believe one party over another. *Brockie*, 268 Mont. at 522, 887 P.2d at 169. However, a jury may not disregard uncontradicted, credible, nonopinion evidence. *Brockie*, 268 Mont. at 522, 887 P.2d at 169.

## ISSUE 1

¶15 Was the jury's damage award supported by substantial evidence?

¶16 Maria contends that because the jury's general damage verdict compensated her for only past medical bills, and ignored uncontroverted evidence of other damages, it was not supported by substantial evidence.

¶17 Taylor contends that the jury's award of $17,553 is supported by substantial credible evidence. Taylor asserts that the evidence of damages was not uncontroverted. Taylor argues that the testimony of Drs. Stratford and Wilson contradicted other evidence of damages because they testified that Maria's complaints were caused by a psychological component unrelated to the accident. Additionally, Taylor contends that because Maria only documented medical expenses of $17,357.44, and the jury awarded approximately $200 more than that amount, that Maria was awarded damages in addition to past medical expenses.

¶18 Maria gave the following testimony regarding the accident and her injury:

> Q. Now, at times, despite your best efforts, and despite taking care of these medications, does it get to the point where you can't take the pain and have to go seek either emergency relief or seek immediate walk-in assistance at the clinic?
>
> A. Yes.
>
> Q. When is the last time that you had to go to the emergency room at the hospital?
>
> A. Really early Friday morning, this last Friday.
>
> . . . .
>
> Q. And what did they do and how did they treat you there?

A. They had taken me and asked what was wrong. I told them what was going on. I had gotten--I woke up with this pain. I need to go back to what happened. I woke up with this pain that had woken me up from sleep, with my neck. And it had like locked to one side, I could not turn it. And I was scared, and it hurt, very painful, very excruciating. And I was scared. I went up to the emergency room, and they treated me with giving me a shot of Demerol and a shot of Phenergan.

Q. Is that what you had to do also in the past at times when this pain has become intractable?

A. Yes, I have.

. . . .

Q. Now, in the meantime, what they did for you there, did you still see the need to go see Lutes the next day?

A. Yes. I sure had to. I didn't want to. I wasn't looking forward to it. I figured I'd be better by the next day. The pain wasn't going away. My neck was still locked, I couldn't move it. I didn't know what was wrong. I figured I should follow up with my doctor than having to seek or proceed going back to the emergency. So I followed up with my doctor, Rod Lutes. And I had to get injections of, I believe it was like a nerve block injections in my neck, which are definitely not fun to have. They are very painful.

¶19 Maria's mother gave the following testimony regarding the effect of the accident on her daughter:

Well, she can't do the things she used to do. In fact, I figured she would get better, you know, after a couple of months. And she has gotten worse. Then about the time I think she gets better again, she has gotten worse. We went from doctor to doctor to doctor to find out, I said "Get to the bottom of this and find out what she has got so we can fix it and get her well." Because she is--She gets very severe pain. And she don't want to live on medication all of her life. She wants to be able to live normal.

¶20 Rodney Lutz, a physicians assistant who has treated Maria since February 1998, related several office visits during which Maria appeared to be in severe pain, including

the following visit:

> On this particular day when I saw her, she was a walk-in patient. She had called and told the front office she had this severe headache. And PA Hewett was not available, so I told them to bring her in and I would take a look at her. And I think further in the note here it will tell us that when I came into the exam room, I found her lying on the exam table just kind of rocking back and forth, holding herself more or less in a fetal type curled up ball. And she was in a lot of pain.

¶21 Taylor presented the testimony of a neurologist, Dr. Lennard Wilson, who examined Maria prior to trial. Dr. Wilson testified that he questioned the legitimacy of certain claims made by Maria regarding sensory loss and numbness. However, when asked by by Taylor's counsel whether he came to any conclusions as to whether Maria was injured in the accident, Dr. Wilson testified as follows:

> I think she sustained a significant impact. From her description, I think she suffered a whiplash injury, which is very common. I think that's a--That's very painful. It takes a while to recover. And when we find an extensive evaluation such as she's encountered . . . we would expect someone to recover after a whiplash injury of that nature, without complication, in a reasonable period of time.

Additionally, when asked what a reasonable period of time would be, Dr. Wilson stated:

> The standard--And again, this is a range, there is nothing exact in this, but most people, we find are at maximal medical improvement at three months. That doesn't mean they're absolutely pain free. Some of them still have residual pain.

¶22 Dr. Wilson also testified as follows:

> Q. Okay. And you understand that Maria was getting trigger point injections?
>
> A. We just talked about it. There were not numerous ones. Yes, there were some.
>
> Q. And are those painful?
>
> A. Yes. I don't give them, so I wouldn't want them done to me, no.

¶23 Taylor additionally presented the testimony of Dr. William Stratford, a psychiatrist,

who examined Maria one month prior to trial. Dr. Stratford testified:

> My opinion is that there is--that there is a long history of psychological disturbance in her and that she probably does suffer from some depression and some anxiety; and that there is every likelihood or probability that these symptoms are exaggerated or magnified in her mind because of her depression or because of her circumstances, and that these are, in many respects, reflections of her psychological condition and are not neurological phenomenon.

¶24 We have previously held that "where a jury fails to award any damages when the only evidence of record supports an award, that verdict is not supported by substantial evidence and may be set aside." *Thompson v. City of Bozeman* (1997), 284 Mont. 440, 446, 945 P.2d 48, 52. In *Thompson*, we concluded that there was insufficient evidence to support the jury's award of zero damages for Thompson's pain and suffering, and stated:

> Thompson presented evidence that the City's negligence caused her injury and the City presented conflicting evidence through its causation witnesses. The jury found in Thompson's favor on that issue. Thompson also presented substantial evidence that she experienced pain and suffering for at least several months as a result of being injured in the vehicle accident. The City did not controvert her evidence on pain and suffering. Because no substantial evidence supports the jury's failure to award damages for pain and suffering, the jury's verdict in this regard was impossible.

*Thompson, 284 Mont. at 446-47, 945 P.2d at 52.*

¶25 Similarly, in this case Maria presented evidence that Taylor's negligence caused her injury and Taylor presented evidence that the injury was less severe than claimed. The jury found that Maria had been injured in the collision. Maria also presented substantial evidence that she experienced pain and suffering since the time of the accident in 1995. The testimony of Maria, her mother, and the physicians assistant Lutz clearly supported an award for pain and suffering. Moreover, the testimony of Dr. Wilson corroborated the fact that Maria suffered a painful injury as a result of the accident. While Dr. Stratford's testimony questioned the extent of her pain and suffering, it did not controvert the evidence that she had pain and suffering as a result of the accident.

¶26 We have previously held that, although it is within the jury's province to weigh the

evidence and determine credibility, a jury is not free to disregard uncontradicted, credible, nonopinion evidence. *Thompson*, 284 Mont. at 443, 945 P.2d at 50. We conclude that Maria was entitled to some award of damages for the pain and suffering proven in this case. We further conclude that the jury's award limited to past medical expenses is not supported by substantial evidence and should be set aside.

¶27 Taylor's assertion that the jury awarded other types of damages in addition to past medical expenses because the jury award was approximately $200 more than the amount of past medical expenses listed on Maria's trial exhibit is without merit. The jury had heard testimony from Maria that she had visited the emergency room and the clinic the week before trial. The expense of these visits was not included on her trial exhibit, however, the jury was presented with evidence that the cost of Maria's emergency room and clinic visits averaged about $130 per emergency visit and $69 per clinic visit. Therefore, the additional $200 appears to cover those medical expenses, rather than any other element of damages on which the jury was instructed.

¶28 Accordingly, we conclude that the jury's damage award was not supported by substantial credible evidence. For that reason, we set aside the jury's verdict on damages and remand to the District Court for a new trial limited to the issue of damages. We note that Taylor has not appealed the jury's finding that Maria was injured as a result of the parties' collision. Therefore, upon retrial that fact need not be re-established.

## ISSUE 2

¶29 Should Taylor have been sanctioned for misconduct by her attorney?

¶30 Maria asserts that Taylor's violation of the District Court's order excluding hearsay statements made by her mother and defense counsel's improper closing argument should result in the imposition of sanctions. She cites to *Kuhnke v. Fisher* (1987), 227 Mont. 62, 740 P.2d 625, in which we upheld a District Court's award of sanctions pursuant to § 37-61-421, MCA, which provides:

> An attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

¶31 In response, Taylor contends that no sanctions are warranted because her attorney did not violate the order in limine or incorrectly state the law during closing arguments.

¶32 Prior to trial, the District Court granted Maria's motion in limine to exclude from evidence hearsay statements in the medical records which were not attributable to Maria, but were made by her mother. Additionally, the District Court excluded all statements from the medical records regarding welfare. However, during opening statement, Taylor's counsel told the jury:

> I think the evidence is going to show that this case actually started about three to four years prior to any automobile accident. The automobile accident took place on April 1st, 1995. We know, and the evidence will be, that Maria and her mother went to Dr. Sweeney on February 9th, 1995, and told Dr. Sweeney that Maria has been having back pains for two to three years. Maria's mother said, based upon these back pains that Maria has been suffering for two to three years, is Maria entitled to a medical disability?
>
> . . . .
>
> So what is this case all about? This is a case about someone who is seeking a disability, and the doctors won't give it to her.

¶33 During closing argument, Taylor's counsel made the following comment on the jury instructions:

> You'll see this instruction. This instruction can be easily misunderstood, so I'd better go over it. It says, if you find that Maria was injured in this accident, then it goes down here and says, your award should include, should, should, should. The judge agrees, everyone in this courtroom agrees that doesn't mean you must award. That just means if you find that she was injured in this accident and if the evidence is sufficient.

¶34 Additionally, Taylor's counsel stated the following during closing argument:

If you find that she should have been better at the time that Dr. Walz examined her, you have to sit down and figure out, okay, what's reasonable to award her from the time of the accident to the time that she should have been able to walk away from this thing and get her life back together, that's the time period that you award that for.

¶35 Following trial, Maria requested that the District Court grant a new trial and award sanctions to her for counsel's disregard of the District Court's order excluding hearsay and evidence regarding welfare, and for his remarks during closing argument. However, that motion was denied by operation of law after 60 days, pursuant to Rule 59(d), M.R.Civ.P.

¶36 We conclude that the actions of Taylor's counsel do not warrant the imposition of sanctions pursuant to § 37-61-421, MCA. Although counsel's statements appear to be in violation of the order in limine, they do not demonstrate a blatant disregard for the District Court's order, and we cannot conclude in light of other evidence that they unreasonably and vexatiously multiplied the proceedings in this case. Accordingly, we decline to impose sanctions against Taylor.

¶37 We reverse the judgment of the District Court and remand to the District Court for a new trial limited to the issue of damages.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, concurring in part and dissenting in part.

¶38 I concur in the Court's opinion on issue two, whether Taylor should have been sanctioned for the conduct of her attorney. I respectfully dissent, however, from that opinion on issue one, whether substantial evidence supports the jury's damage award. I

would conclude that it does and affirm.

¶39 The Court states that the only issues remaining for trial were whether the accident caused injuries to Maria and, if so, the amount of her damages. There is no longer a question of whether the accident caused injuries to Maria; the jury found it did and that determination is not appealed. In my view, however, the second issue remaining for trial was not merely the amount of Maria's damages, as the Court states it. It was the amount of damages *caused* by the accident. That distinction is important to the first issue before us, namely, whether substantial evidence supports the jury's damage award. The Court concludes it does not. I disagree.

¶40 I do agree with the Court's statement of the controlling principles regarding this issue. If conflicting evidence exists, we do not retry a case because the jury chose to believe one party over another. At the same time, however, a jury may not disregard uncontroverted, credible, nonopinion evidence. *See Brockie*, 268 Mont. at 522, 887 P.2d at 169 (citations omitted). We also have held that where the only evidence supports an award of damages and the jury fails to award any damages, the verdict is not supported by substantial, credible evidence. *Thompson*, 284 Mont. at 446-47, 945 P.2d at 52. In *Thompson*, the plaintiff presented substantial evidence that she experienced pain and suffering for some months "as a result of being injured in the vehicle accident [and] [t]he City did not controvert her evidence on pain and suffering." On that basis, we concluded there was insufficient evidence to support the jury's award of zero dollars for pain and suffering. *Thompson*, 284 Mont. at 446-47, 945 P.2d at 52.

¶41 There is another important principle relating to our review of jury damage awards that the Court does not mention, but which is important in properly resolving this issue. That principle is that it is impossible and improper for a court to try to segregate or ascertain the underpinnings for a jury verdict which awards damages without breaking them into separate elements. *See Busta v. Columbus Hospital Corp.* (1996), 276 Mont. 342, 375, 916 P.2d 122, 142; *Evans v. Teakettle Realty* (1987), 226 Mont. 363, 365-66, 736 P.2d 472, 474. On the record before us here, the proper application of all of these principles regarding damage awards and the sufficiency of evidence to support them compels a conclusion that the jury's award of damages to Maria in the amount of $17,553 is amply supported by evidence and must be upheld.

¶42 The Court starts its analysis from the implicit premises that 1) Maria documented medical expenses of $17,357.44; 2) her medical expense evidence was all uncontroverted

insofar as the relationship between the accident and the expenses incurred; and 3) the jury necessarily accepted those amounts and then "appears" to have merely added on approximately $200 for Maria's most recent emergency room and clinic visits in reaching its total damage award. At that point, the Court feels free to conclude that the jury awarded her nothing for pain and suffering even though she presented substantial and noncontroverted evidence about her extensive pain and suffering. A review of the record debunks the Court's second premise, and controlling law negates the third.

¶43 Rather than trying to set forth every item of testimony which undercuts the Court's conclusory notion that the documented medical expenses all related to injuries Maria sustained in the accident, I will present only a few examples of testimony--from Maria's own medical witnesses--which controverted their initial testimony that all the documented expenses were accident related. Dr. Sweeney, who practiced at the Immediate Care Center, for example, testified on direct examination that the medical bill summary contained in Plaintiff's Exhibit 9 of treatment he provided, including the physical therapy he ordered and associated treatment, all related to the accident. On cross-examination, however, he testified that on April 7, 1995--the first time he saw Maria after the accident-- her chief complaint was tightness in the chest, coughing, and hurting to breathe. He saw her again on May 5, when her main complaint and reason for coming in was an upper respiratory infection. Again on June 2, her main complaint was still the upper respiratory infection. On August 10, Dr. Sweeney saw Maria for a sore throat. In October of 1995, her primary complaint was that she was not sleeping well, and Dr. Sweeney's opinion was that the decongestants she had been taking may have contributed to her disrupted sleep.

¶44 These visits to Dr. Sweeney clearly were not related to the accident and, therefore, the medical expenses associated with these visits were not damages resulting from the accident. I would submit that the documented medical expenses regarding these visits to Dr. Sweeney clearly controvert the Court's implicit premise that all documented medical expenses were related to the accident and its corresponding determination that the jury necessarily accepted all the medical expense evidence as relating to the accident. Therefore, since the evidence was in conflict, it is clear that the jury was not required to accept Maria's position that all the documented medical expenses resulted from the injuries she sustained in the accident.

¶45 The testimony of physician's assistant Lutz, who was employed at Occupational Sports Medicine Associates (Sports Medicine), is similar to that of Dr. Sweeney; that is, it did not constitute uncontroverted evidence that all the medical expenses associated with

his or Sports Medicine's treatment of Maria was related to, or resulted from, the accident. Certainly, he began by testifying that all the Sports Medicine medical bills reflected on Plaintiff's Exhibit 9 related to injuries Maria received in the accident. He also testified, however, that Maria presented to Hewett, another physician's assistant, on two occasions in June of 1997, with complaints of back pain and Hewett found no muscle spasm or trigger points. The same was true of another visit to Hewett in January of 1999. Indeed, Lutz's diagnosis of myofascial pain (back pain involving trigger points) resulting from the accident was based entirely on Maria's statements to him--controverted throughout the record--that she did not have back problems before the accident and was healthy prior to that time. Again, the relationship between the expenses associated with the referenced visits to Hewett and the accident is controverted and the jury was not required to accept all the documented medical expenses.

¶46 Dr. Davis, Maria's clinical psychologist, also testified initially that, to the extent his bills were reflected on Plaintiff's Exhibit 9, all treatment related to the accident. Later, however, he testified that everything he had testified to did not necessarily result from the accident and that some of Maria's problems preexisted that event. With regard to one visit from Maria, he observed that part of the stress he was treating her for resulted from her attorney vigorously encouraging her to become involved in job search activities. I am not convinced that lawyer-induced stress of this type, and associated treatment, truly relates to the accident or was perceived by the jury to do so.

¶47 Dr. Davis also agreed there is always a possibility that someone's problems were in wanting to exhibit symptoms. But his later testimony concerning Maria's pain and suffering did even more to controvert the picture she and her mother presented to the jury on that subject. Dr. Davis testified that psychological factors are often judged to play a role in maintaining myofascial pain syndromes. He gave Maria a pain behavior test, explaining that much of pain behavior is learned and reinforced by environmental factors; indeed, the more pain behavior demonstrated, the more likely the pain complained of is in some degree controlled by environmental factors and reinforced from the environment. Maria's score on the pain behavior test suggested some possibility of that in her case. Another score, from a different test, indicated a possibility of symptom exaggeration by Maria. Finally, Dr. Davis also testified that she had left, or complained of, several doctors and emergency room personnel because they did not listen to her enough, did not "hear her distress."

¶48 Finally, Dr. Peterson, associated with Sports Medicine, initially testified that all of the

care and treatment on Plaintiff's Exhibit 9, including that from Dr. Davis, the Clinic, and others "appear to be related to" Maria's injuries from the accident. However, he later identified at least two occasions--one in June of 1997 and one in January of 1998--when no muscle spasms were located. Importantly, and like Lutz, he related Maria's painful trigger points to the accident because that was what she told him. Finally, Dr. Peterson observed that Maria quit seeing Dr. Walz because they did not hit it off after the examination he conducted could not locate anything wrong with Maria and he was unable to find any pain in the lower back area.

¶49 In short, and without even reviewing the medical testimony presented by the defendant, there is substantial conflict in the record about the relationship between some of Maria's medical expenses and the accident at issue. Also importantly, given the Court's discussion of her pain and suffering, there is substantially conflicting evidence about not only the actual extent of that pain overall, but its relationship to--that is, whether it was caused by--the accident. Clearly, the evidence of record required the jury to award Maria some medical expense damages; just as clearly, the conflicting evidence did not require the jury to award the total medical expense damages documented by Maria. In addition, the evidence clearly supported an award of pain and suffering damages; but, since the evidence conflicted regarding the extent of her pain and suffering and how much of it resulted from the accident, it was within the jury's discretion how much to award for that element of damages. In this regard, the present case differs significantly from *Thompson,* where the City did not controvert the plaintiff's evidence of pain and suffering at all and, as a result, we concluded there was insufficient evidence to support the jury's award of zero dollars for pain and suffering. *See Thompson*, 284 Mont. at 446-47, 945 P.2d at 52. Similarly, with regard to both medical expenses and pain and suffering, the jury here was not presented with uncontradicted, reliable evidence which it would not have been free to disregard. *See Brockie*, 268 Mont. at 522, 887 P.2d at 169.

¶50 There is another important difference between this case and *Thompson*, of course, and it relates to the form of verdict the jury was provided and returned. In *Thompson*, the jury was provided a verdict form with separate lines for damages for medical expenses, lost wages, pain and suffering, loss of ability to pursue occupation, loss of future wages and others. *Thompson*, 284 Mont. at 442, 945 P.2d at 49. It was the verdict form itself which enabled this Court to determine precisely what the jury had awarded for each element of damages and, in pertinent part, that it had awarded zero dollars for pain and suffering. *Thompson*, 284 Mont. at 442, 945 P.2d at 49.

¶51 In the present case, the verdict form had only one line for damages, and the total damages awarded were $17,553. It simply is not possible for this Court to determine how many separate damage elements were awarded and, indeed, the Court's opinion in this regard is forced to admit that it "appears" that the approximately $200 more than the documented medical expenses covered Maria's last emergency room and clinic visits, which had not been included in the documentation. From this, the Court concludes that the jury's award was "limited to past medical expenses" and that, as a result, it was not supported by substantial evidence. Given this verdict form and this record, I submit that the Court's conclusion is pure speculation and, further, that it is impossible for the Court to know what the awarded damages encompassed. It is error to try to ascertain the underpinnings of the total damage award. *See, e.g., Busta*, 276 Mont. at 375, 916 P.2d at 142; *Evans*, 226 Mont. at 365-66, 736 P.2d at 474.

¶52 I would conclude that the jury's damage verdict is supported by substantial, credible evidence. Accordingly, I would affirm the District Court on this issue, as well as on the second issue, and I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY